UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ACCEPTANCE INDEMNITY INSURANCE CO.**, <br><br> Plaintiff, <br><br> v. <br><br> **J HOHMAN LLC D/B/A LAGARDA SECURITY & CANNON SECURITY**, *et al.*, <br><br> Defendants. | **2:25-CV-10502-TGB-CI** <br><br> HON. TERRENCE G. BERG <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 20)** |

In 2019, Tony Lamont Gates worked as a uniformed security guard at the Sheridan I Apartments, a government-owned apartment building in Detroit. On February 9, 2019, according to the Complaint, Gates had an encounter with Gary Harris in which Harris was intoxicated and Gates shot and killed him on the premises. ECF No. 1 at PageID.19. Harris' Estate brought a lawsuit in Wayne County Circuit Court (the underlying "Harris Lawsuit") against Gates and Gates' employer, J Hohman LLC d/b/a Lagarda Security & Cannon Security ("Lagarda") seeking damages for Harris' injuries and death. Lagarda had an insurance policy, and the provider of that policy is the Plaintiff in this case, Acceptance Indemnity Insurance Company ("AIIC"). Plaintiff AIIC has brought this suit against Lagarda and two personal representatives of the Estate of Gary Harris ("Defendants") seeking a declaratory

judgment that the policy does not provide coverage to Lagarda for the damages in the underlying lawsuit.

Now before the Court is Plaintiff AIIC's Motion for Judgment on the Pleadings. ECF No. 20. For the following reasons, the Motion will be **DENIED**.

## I. BACKGROUND

In the underlying action, the Estate of Gary Harris sued Defendant J Hohman LLC d/b/a Lagarda Security & Cannon Security, the employer of Gates and the company providing security guard personnel at the location where Harris was shot and killed. Plaintiff Acceptance Indemnity Insurance Company ("AIIC") is an insurance company that issued Lagarda Security a primary Commercial General Liability Policy ("CGL Policy") as well as an excess Commercial Excess Liability Policy ("Excess Policy").

### A. The Underlying Action

The First Amended Complaint in the Harris Lawsuit[1] sets forth that on the evening of February 9, 2019, Defendant Tony Lamont Gates was on duty as one of Defendant Lagarda Security's uniformed security

---

[1] A copy of the First Amended Complaint in the Harris Lawsuit is attached to AIIC's Complaint and Motion for Judgment on the Pleadings. These are undisputed facts and affirmative allegations made by the Estate itself as plaintiff in the underlying Harris lawsuit. *See* Ans., ECF No. 14, PageID.224-25, ¶¶ 22-25 (admitting allegations).

guard working at Sheridan I Apartments, a senior citizens residence owned and operated by the Detroit Housing Commission. Harris Compl., ECF No. 1, PageID.187-89, ¶¶ 3, 6, 8, 9. At approximately 10:30 p.m., residents reported to security that they found Gary Harris intoxicated and sleeping in the hallway of the fourth floor. *Id.* at ¶ 11. Gates awakened Harris and told him to leave. *Id.* at ¶ 12. The underlying complaint explains that during the process of getting Harris to leave the premises,

> 15. [O]n two successive occasions, the elevator doors reopened on the fourth floor, at which time Gary Harris wandered out a few steps from the elevator doorway, at which time Defendant Gates brandished his gun forcing Gary Harris back into the elevator with the elevator doors closing on each occasion.
>
> 16. [O]n the third occasion, when the elevator doors opened once again, Gary Harris did casually and drunkenly take a few steps off the elevator with his hands in his pants pocket, in a drunken and non-threatening manner, whereupon Defendant Gates raised his firearm and shot Gary Harris once in the abdomen, who then dropped to the floor immediately.

*Id.* at PageID.188-89. Gary Harris died of a single gunshot wound on February 10, 2019 at approximately 12:26 a.m. *Id.* at ¶ 18.

The Harris Lawsuit was commenced on behalf of the Estate against Lagarda Security and Gates in the Wayne County Circuit Court under Case No. 20-003723-NZ for assault and battery, negligent hiring,

retention, training and supervision, gross negligence, and negligent infliction of emotional distress (the latter claim was dismissed). At a settlement conference on December 9, 2024, the parties to the Harris Lawsuit reached a confidential agreement to resolve the potential liability of all defendants in that lawsuit. *Id.* at ¶ 28. Lagarda assigned all of its rights under the AIIC Policies with respect to the allegations against it in that action to the Estate. *Id.* at ¶ 29. At a hearing on February 6, 2025, the Wayne County Circuit Court granted Plaintiff's Motion to Approve Settlement, Partial Distribution and to Set Hearing for Determination of Distribution as to Heirs. *Id.* at ¶ 30.

### B. AIIC Policies

Plaintiff Acceptance Indemnity Insurance Company ("AIIC") issued Defendant Lagarda Security a primary Commercial General Liability Policy ("CGL Policy") as well as an excess Commercial Excess Liability Policy ("Excess Policy").

The CGL Policy (No. CL00961007), effective November 6, 2018 to November 6, 2019 ("CGL Policy"), contains a limit of $1,000,000 each occurrence, $1,000,000 Personal & Advertising Injury Limit, and $2,000,000 general aggregate limit. The CGL Policy contains, among other applicable terms and conditions, a Designated Operations Exclusion endorsement, which sets forth as follows:

**DESIGNATED OPERATIONS EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Form CG 00 01 12 07, SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** . . . are amended and the following is added:

Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, *it is agreed that this insurance does not apply to "Bodily Injury" or "Property Damage" arising out of the operations described in the Description of "Your Operations" Schedule contained in this endorsement*, regardless of whether such work was conducted by you or on your behalf. This endorsement applies even if other causes contribute to or aggravate the "Bodily Injury" or "Property Damage."

Description of "Your Operations" Schedule:
*Any and all operations at or involving*: (1) establishments engaged in the primary business purpose of serving, dispensing, or distributing alcoholic beverage; (2) *government owned housing facilities*; (3) body guarding of athletes, entertainers or celebrities; (4) screening of passengers or baggage at airports or mass transportation terminals; (5) bouncing and related activities; (6) repossessions, foreclosures, or collections; (7) bounty hunting or fugitive recovery; and/or (8) non-security guard operations performed by, or on behalf of, the named insured.

**B.** It is the intent of this endorsement to exclude from this insurance all claims, demands, or suits arising out of the rendering of or failure to render any services scheduled above in the Description of "Your Operations" Schedule. There shall, therefore, be no duty or obligation on our part under this Insurance to defend, respond to, investigate, or indemnify anyone, including but not limited to you, your agents, servants, or employees, or any third parties for any such claim, demand or suit.

ECF No. 1, PageID.102 (emphasis added).

The Excess Policy (No. XL00450539), effective November 6, 2018 to November 6, 2019 ("Excess Policy"), follows form to the CGL Policy and

therefore is subject to the Designated Operations Exclusion, as set forth in the Amendatory Endorsement:

> Unless otherwise directed by this policy, *the insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance"* except for:
>
> 1. The amount of the limits of liability;
> 2. Any "other insurance" provisions; and
> 3. Any obligation to investigate or defend any claim or "suit" against an insured or reimburse the costs and expenses incurred to investigate or defend any claim or "suit" against an insured.

*Id.* at PageID.155.

### C. Coverage Dispute

Following notice to AIIC of the Harris Lawsuit, AIIC reviewed the allegations in the Harris Lawsuit and Lagarda's request for coverage for that Lawsuit. AIIC Compl., ECF No. 1, ¶ 26. Based on AIIC's review of the CGL Policy, the Excess Policy, and the Underlying Complaint, AIIC determined that there was no coverage,[2] including defense or indemnity, for Lagarda for the Harris Lawsuit under either the CGL Policy or the Excess Policy, and communicated that coverage position in writing to Lagarda. *Id.* at ¶ 27. After the parties reached a settlement, Lagarda

---

[2] While the instant Motion seeks Judgment on the Pleadings based on the Designated Operations Exclusion, AIIC expressly reserved its positions set forth in its Complaint that other terms and conditions in the CGL Policy and the Excess Policy apply to preclude or limit coverage for Lagarda and/or Gates for any liability asserted against them in the Harris Lawsuit. ECF No. 20, PageID.259 n.1.

6

assigned all of its rights under the AIIC Policies with respect to the allegations against it in that action to the Estate. *Id*. at ¶¶ 28-29.

AIIC commenced this lawsuit against Lagarda and the Estate by filing a Complaint for Declaratory Judgment on February 20, 2025. ECF No. 1. Defendants filed an Answer and Affirmative Defenses on March 17, 2025. ECF No. 14. AIIC then filed the instant Motion for Judgment on the Pleadings, arguing the Designated Operations Exclusion precludes coverage for "'bodily injury' . . . arising out of the operations described in the Description of 'Your Operations' Schedule," which includes "[a]ny and all operations at or involving . . . government owned housing facilities." ECF No. 20.

Defendants do not dispute that the shooting that gave rise to the underlying lawsuit took place in a government-owned housing facility but respond that the Designated Operations Exclusion renders the insurance contract illusory. ECF No. 22.

## II. LEGAL STANDARD

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Courts assess Rule 12(c) motions "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (citation omitted). For purposes of a Rule 12(c) motion, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion

may be granted only if the moving party is nevertheless clearly entitled to judgment." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006) (citation omitted). A Rule 12(c) motion is granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* (citation omitted).

When a defendant files a Motion for Judgment on the Pleadings, courts "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Id.* But "[w]hen the plaintiff, as opposed to the defendant, moves for judgment on the pleadings, . . . we ask 'whether the plaintiff's petition, stripped of those allegations which are denied by the defendant's answer, would leave the petition stating a cause of action against the defendant,'" *United Food & Commercial Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (citations omitted), or "whether the allegations of the answer, if taken as true, constitute a good defense to the plaintiff's action," 61A Am. Jur. 2d Pleading § 497.

In ruling on a Rule 12(c) motion, the court may "consider documents attached to, incorporated by or referred to in the pleadings." *Bucciarelli v. Nationwide Mut. Ins. Co.*, 662 F. Supp. 2d 809, 814 (E.D. Mich. Aug. 26, 2009)(Murphy, J.) (citation omitted). "If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by

8

the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "Rule 12(d) does not empower a responding party to unilaterally convert a Rule 12 motion by attempting to inject factual material into the record." *Encana Oil & Gas (USA), Inc. v. Zaremba Fam. Farms, Inc.*, No. 1:12-CV-369, 2013 WL 239341, at *2 (W.D. Mich. Jan. 22, 2013).[3]

Finally, courts sitting in diversity apply the substantive law of the forum state. *Himmel v. Ford Motor Co.,* 342 F.3d 593, 598 (6th Cir. 2003). Here, the parties agree that the substantive law of Michigan governs.

## III. DISCUSSION

### A. Clear and Unambiguous Contract

"The primary goal in the construction or interpretation of any contract is to honor the intent of the parties," which is best ascertained by "the language of the parties' contract." *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 476 (2003) ("[W]here . . . it is not possible to determine the parties' intent from the language of their contract, the *next* best way to determine the parties' intent is to use relevant extrinsic evidence."); *see also Frankenmuth Mut. Ins. Co. v. Masters*, 468 Mich. 459, 473 (1999) ("Where there is no ambiguity, we will enforce the terms of the contract as written."); *Wasik v. Auto Club Ins. Ass'n*, 341

---

[3] Here, the Underlying Complaint, General Policy, and Excess Policy, attached to AIIC's Complaint, can be considered, but the affidavit attached to Defendant's Response cannot be considered under Rule 12(c).

Mich. App. 691, 696 (2022) ("[A] provision is not ambiguous if 'it is not susceptible to more than one interpretation and does not conflict with any other provision.'") (citation omitted). Thus, "[w]here policy language is clear, this Court is bound by the specific language set forth in the policy." *Am. Bumper & Mfg. Co. v. Nat'l Union Fire Ins. Co.*, 261 Mich. App. 367, 375 (2004) ("An insurer is not required to defend its insured against claims specifically excluded from policy coverage.").

Here, the CGL Policy contains a Designated Operations Exclusion that precludes coverage for claims of bodily injury or property damage arising out of certain types of operations:

> Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, it is agreed that this insurance does not apply to "Bodily Injury" . . . arising out of the operations described in the Description of "Your Operations" Schedule . . . : [a]ny and all operations at or involving . . . *government owned housing facilities*[.]

ECF No. 1, PageID.102 (emphasis added). The endorsement further states, "It is the intent of this endorsement to exclude from this insurance all claims, demands or suits arising out of the rendering of or failure to render any services scheduled above in the Description of 'Your Operations' Schedule." *Id.*

There is no dispute that the shooting that gave rise to the underlying lawsuit occurred at a "government owned housing facilit[y]" known as Sheridan I Apartments, and that the Detroit Housing

10

Commission hired Lagarda to provide security there. Harris Compl., ECF No. 1, PageID.187-89, ¶¶ 3, 6, 8, 9; *see also* Ans., ECF No. 14, PageID.225, ¶ 24 (admitting to these allegations).

Interestingly, Defendants did not argue there was any ambiguity in the Designated Operations Exclusion specifically, or the policies generally, and in fact admitted in their Response that the language of the General Policy, Excess Policy, and Designated Operations Exclusion "speaks for itself." ECF No. 22, PageID.503, ¶¶ 3-4. Defendants did not cite any cases finding such exclusion to be ambiguous, and did not address or distinguish any of the cases AIIC cited in which courts enforced similar designated operations exclusions.[4]

---

[4] *See, e.g.*, *View Home Owner's Ass'n v. The Burlington Ins. Co.*, 552 S.W.3d 726, 731–32 (Mo. Ct. App. 2018) (finding that a similar designated operations exclusion "establishe[d] that the policy did not cover—and thus TBIC had no duty to defend—any claim for 'property damage' arising from completed construction" where the "gravamen of the claims . . . was the deficiencies in the completed construction of the property"); *Gem-Quality Corp. v. Colony Ins. Co.*, 177 N.Y.S.3d 133, 139 (2022) (finding that the "designated operations" exclusion "expressly and clearly excludes coverage for damages for bodily injury sought by way of a direct claim by the injured party against the insured" despite an exception for liability assumed by the insured under an "insured contract"); *Hiscox Ins. Co., Inc. v. Rodriguez*, No. 4:22-CV-01890, 2024 WL 1392544, at *3 (S.D. Tex. Mar. 30, 2024) (noting that "the Policy's text provides a relatively straightforward ongoing operations exclusion. . . . . exclud[ing] coverage for bodily injury 'arising out of the ongoing operations described in the Schedule of' Endorsement 15 [which] . . .

Thus, the clear and unambiguous language of the Designated Operations Exclusion precludes coverage for bodily injury or property damage arising out of any and all of Lagarda's operations at or involving "government owned housing facilities," including security services at Sheridan I Apartments. Accordingly, there is no insurance coverage (defense or indemnity) available to Lagarda for the Harris Lawsuit under the CGL Policy or the Excess Policy. *See Mich. Battery Equip., Inc. v. Emcasco Ins. Co.*, 317 Mich. App. 282, 285 (2016) ("Clear and specific exclusions must be given effect, and coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims.") (cleaned up) (citation omitted).

### B. Illusory Contract

But Defendants contend that the contract—even if unambiguous—is illusory and therefore should be interpreted to provide coverage.

In Michigan, an insured's "perceived expectations" may not "override the clear language" of an insurance policy. *Ile v. Foremost Ins. Co.*, 493 Mich. 915, 915 (2012); *see also Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 60 (2003) ("[O]ne's alleged 'reasonable expectations' cannot

---

expressly lists '[s]caffolding operation' as one of several 'designated ongoing operations'"); *First Fin. Ins. Co. v. Debcon, Inc.*, 82 F.3d 418 (Table), 1996 WL 180171 (6th Cir. 1996) (finding that an endorsement limiting coverage to "hazards . . . incident to 'IRON OR STEEL ERECTION' . . . excluded, without ambiguity, coverage for damages of the type involved in the case," that is the toppling of a crane).

supersede the clear language of a contract."). But "an illusory policy [ ] would constitute an exception to the requirement that an unambiguous contract be enforced as written." *Cincinnati Ins. Co. v. Hall*, No. 308002, 2013 WL 3107640, at *5 (Mich. Ct. App. June 20, 2013). "An 'illusory contract' is defined as an agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation." *Id.*

Therefore, courts "avoid interpreting insurance policies in such a way that an insured's coverage is never triggered and the insurer bears no risk," and enforce illusory policies "so that it is not merely a delusion to the insured." *Id.* Courts do so by "giv[ing] effect to the reasonable expectation of the insured." *Matti v. Tahnun*, No. 364473, 2024 WL 742247, at *6 (Mich. Ct. App. Feb. 22, 2024), *appeal denied*, 24 N.W.3d 788 (Mich. 2025) (unpublished) (citing *Ile v. Foremost Ins. Co.*, 293 Mich. App. 309, 315-316 (2011), *rev'd on other grounds*, 493 Mich. 915 (2012)).[5]

However, in Michigan, courts should "not strike an insurance policy as illusory if there is any manner in which the policy could be interpreted to provide coverage." *Hall*, 2013 WL 3107640, at *6 (citing *Ile*, 493 Mich. at 915). Thus, "[insurance] coverage is illusory only if there are no

---

[5] In *Ile*, 493 Mich. at 915, the Michigan Supreme Court reversed the Michigan Court of Appeals, 293 Mich. App. at 315-16, because it found that the contract was not illusory based on the facts of the case. The Michigan Supreme Court did not otherwise modify the law surrounding illusory contracts.

circumstances under which benefits will ever be paid under the policy" but it "is not illusory where there are circumstances that can be reasonably foreseen in which the coverage will pay." *Ile*, 293 Mich. App. at 321-22 (citation omitted).

Here, Defendants argue the Designated Operations Exclusion precluding coverage for "[a]ny and all [of Lagarda's] operations at or involving . . . government owned housing facilities," ECF No. 1, PageID.102, results in "imposing no risk to the insurer." *See Ile*, 293 Mich. App. at 315-16. Because Lagarda paid premiums on the policy to obtain coverage over its operations at Sheridan I Apartments, and it reasonably expected such coverage, Defendants request that this Court interpret the insurance so that it is not "merely a delusion" to Lagarda. *See Hall*, 2013 WL 3107640, at \*5. For its part, AIIC argues in its Reply that the policies it issued Lagarda cover a broad range of risks, and that the Designated Operations Exclusion for government-owned housing facilities is a very specific exclusion that does not preclude coverage for Lagarda's security operations at locations other than government-owned housing facilities. In other words, AIIC asserts that there are multiple "manner[s] in which the policy could be interpreted to provide coverage," *Hall*, 2013 WL 3107640, at \*5, including for claims "arising from non-government owned housing, or other aspects of [Lagarda's] operations," ECF No. 23, PageID.551.

The Court may grant a Rule 12(c) motion filed by a plaintiff if it determines that there are "no material issues of fact" and the plaintiff is "entitled to judgment as a matter of law," after taking "all well-pleaded material allegations of the pleadings of the opposing party . . . as true." *Rawe*, 462 F.3d at 526. The Court must "strip [the complaint] of those allegations which are denied by the defendant's answer," to determine whether the complaint still states a cause of action against the defendant, *Kroger Co.*, 51 F.4th at 202, and must consider whether the allegations of the answer "constitute a good defense to the plaintiff's action," 61A Am. Jur. 2d Pleading § 497. Thus, AIIC must show that, taking Lagarda's pleadings as true, AIIC's complaint plausibly alleges that there are ways "in which the policy could be interpreted to provide coverage," *Hall*, 2013 WL 3107640, at *6, or "there are circumstances that can be reasonably foreseen in which the coverage will pay," *Ile*, 293 Mich. App. at 321-22, such that the policy is not illusory.

Reviewing then the allegations in the Complaint, the attached materials, and the Answer, it is unknown at this point whether Lagarda operates in any locations *other* than government-owned housing facilities. Based on the underlying Harris Complaint, Detroit Housing Commission hired Lagarda to provide "security guard personnel at four locations, including Sheridan I." Harris Compl., ECF No. 1, PageID.187, ¶ 4; AIIC Compl., *id.* at PageID.18, ¶ 24; *see also* Ans., ECF No. 14, PageID.225, ¶ 24 (admitting to this allegation). Thus, the pleadings

15

before the Court show that four of Lagarda's operations were at government-owned facilities, where coverage is excluded under the Designated Operations Exclusion. Neither the Complaint nor the Answer states that Lagarda operated a security service at any non-government-owned facilities. If those four government-owned facilities constitute the full extent of Lagarda's operations during the policy period, then there would be "no circumstances under which benefits will ever be paid under the policy" because of the Designated Operations Exclusion. *See Ile*, 293 Mich. App. at 321 (citation omitted).

AIIC asserts in its Reply that even if the only contracts that Lagarda had at the time of contracting were at government-owned housing facilities, Lagarda "could well have accepted contracts at non-government-owned facilities during the policy period." ECF No. 23, PageID.551. Even assuming this speculative assertion could create a "circumstance[ ] that can be reasonably foreseen in which the coverage will pay," *see Ile*, 293 Mich. App. at 321-22 (citation omitted), AIIC failed to allege in its own Complaint either that Lagarda had other contracts with private agencies, or that Lagarda *could* have contracted with private agencies. Thus, Lagarda could neither admit nor deny such allegations in its Answer. Furthermore, "[i]f the plaintiff seeks judgment on the ground that the allegations of the complaint are admitted in the answer, the defendant's admissions must be clear, distinct, and unequivocal." 61A Am. Jur. 2d Pleading § 497. Here, Lagarda's admission

16

that it provided security services at four *government*-owned locations is the complete opposite of a "clear, distinct, and unequivocal" admission that it provided (or could have provided) services at *non-government*-owned facilities. *See id.* And while AIIC supposes in its Reply that Lagarda *could* have contracted with private agencies during the policy period, such supposition is no more reliable than would be an alternative speculation that Lagarda *could* have contracted with the City of Detroit to provide security services exclusively at government-owned facilities, such as the four mentioned in the underlying Harris Complaint.

Moreover, while AIIC asserted in its Reply that the Designated Operations Exclusion does not preclude coverage for claims "arising from . . . other aspects of [Lagarda's] operations," ECF No. 23, PageID.551, it failed to allege or describe what such "other aspects" of Lagarda's operations might be covered if "any and all [of Lagarda's] operations" involve "government owned housing facilities," ECF No. 1, PageID.102. *See, e.g.*, *Essex Ins. Co. v. Detroit Bulk Storage*, No. 11-13277, 2014 WL 3687032, at *11 (E.D. Mich. July 23, 2014)(Borman, J.) (finding coverage not illusory "where the [ ] Policy would indeed provide coverage for certain damages and loss to a third-party's property" although not for the insured's own property, stored property, or leased property); *Hall*, 2013 WL 3107640, at *6 (finding that "[t]he exclusion for 'abuse or molestation' does not render the entire policy illusory when there are countless

17

examples of when the policy would provide coverage," such as negligence).

Thus, without an allegation that Lagarda operated in both government-owned and non-government-owned facilities during the policy period, it appears under the pleadings that the Designated Operations Exclusion would eliminate all coverage under the policies, precluding any "manner in which the policy could be interpreted to provide coverage." *See Hall*, 2013 WL 3107640, at \*6; *Ile*, 293 Mich. App. at 321-22. As a result, AIIC's request for judgment on the pleadings is inappropriate at this stage. *See Rawe*, 462 F.3d at 526. Discovery is necessary to determine whether Defendants' contention that the policy may be illusory can be tested. AIIC's Motion for Judgment on the Pleadings is therefore **DENIED** without prejudice. Should discovery reveal that Lagarda operated in non-government-owned facilities during the policy period, AIIC would be free to renew this motion in a timely manner or file a motion for summary judgment based on similar grounds.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 20) is **DENIED** without prejudice.

**SO ORDERED**.

Dated: March 31, 2026        /s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE